WALTER A. SUMMERTON AND WILLIAM F. THIELE, PROSECUTORS, v. THE CITY OF ELIZABETH ET AL.

Argued June 1, 1909—Decided June 4, 1909.

1. Where an act of the legislature authorizes the construction of an intercepting sewer, or a system of sewerage, in any city through which a river, stream or creek runs, and into which the sewage of the city is emptied, so that all sewers emptying into such stream shall thereafter be connected with such intercepting sewer or sewers, the words "or a system of sewerage" refer to the word "intercepting" and should be read, in connection. with it and the purpose of the act. as meaning a system of intercepting sewers, for in considering the constitutionality of a statute the substance of the legislative provision is given preference to the form in which it is expressed, and the statute does not express two objects within the constitutional prohibition.

2. Where the title of such statute declares as one of its purposes the granting of authority to build intercepting sewers "to receive all such sewage, to be disposed of in such manner as shall be deemed proper." it sufficiently expresses the object of an act which authorizes the establishment of outlets or places of deposits for the sewage carried by such intercepting sewers.

3. A statute applying to all cities through which a river, stream or creek runs, into which the sewage of the city is emptied, authorizing the building of intercepting sewers to remove such pollution from, and the cleansing of, such streams, is not an illusory or unconstitutional classification.

On *certiorari*.

Before Justices REED, BERGEN and VOORHEES.

For the prosecutors, *McDermott & Enright.*

For the city of Elizabeth, defendant, *James C. Connolly.*

For McCloud & Brennan, defendants, *Frederick J. Faulks.*

The opinion of the court was delivered by

BERGEN, J. The common council of the city of Elizabeth adopted two ordinances which this writ brings under review, one authorizing the construction of an intercepting sewer, and certain lateral sewers, and the other providing for the issuing of bonds to raise the money necessary to meet the costs of such construction. The only legal support for these ordinances is an act of the legislature passed in 1907 (*Pamph. L., p.* 267), which the prosecutors insist does not comply with the requirements of the constitution of the state. The testimony taken in this proceeding shows that the city of Elizabeth has a general system of sewers which, for the most part, discharge the sewage of the city into the Elizabeth river, a stream which runs through the city, and has thereby become polluted to an extent likely to endanger the health of the inhabitants of the city. It is proposed to abate the nuisance by constructing an intercepting sewer, which, following substantially the course of the river, will receive all of the sewage which is now emptied into the river, and conduct it to tidewater. In order to accomplish this, lateral sewers will have to be constructed, in addition to the intercepting sewer, and the general system altered in some particulars.

The prosecutors claim that the statute, which it is urged, justifies these ordinances, violates the constitution of the state in the following particulars: (1) that it embraces more than one object; (2) that it embraces objects not expressed in the title; (3) that it is a local or special law regulating the internal affairs of towns or counties.

The title of the act reads as follows: "An act to authorize cities of this state through which any river, stream or creek runs, and into which the sewage of any city empties, to build and construct intercepting sewers to receive all such sewage

to be disposed of in such manner as shall be deemed proper, and to provide for the alteration of a general system of sewerage and drainage in cities, and to cleanse and otherwise improve such rivers, streams or creeks, and to issue bonds to meet the expense of such work." The preamble and first section of the act runs as follows: "Whereas, many of the cities of this state are so situated that they are traversed by rivers, streams or creeks, into which such cities drain all or part of their sewage, thereby rendering such rivers, streams or creeks foul, noxious and detrimental to health; therefore, be it enacted by the senate and general assembly of the State of New Jersey: It shall be lawful for * * * any city through which any river, stream or creek runs, and into which the sewage or part of the sewage of such city is emptied, * * * to order and cause an intercepting sewer or sewers, or a system of sewerage, to be built and constructed in such city, or any part thereof, and to alter a general system of sewerage for such city, or any part thereof, so that all sewers within the district intended to be drained by such intercepting sewer, and now emptying into such river, stream or creek, shall thereafter be connected with such intercepting sewer or sewers into which all sewage matter from such connecting sewers shall thereafter be discharged."

The first point pressed by the prosecutors is that the act authorizes the building of "a system of sewerage" as an improvement distinct from an intercepting sewer, and that as they are not kindred, but separate objects, the act is one which the constitution condemns. Without admitting the correctness of this deduction, we are of opinion that the act does not provide for a separate system of sewerage to be constructed without reference to an intercepting sewer. What the act authorizes to be built is an intercepting sewer or sewers, or a system of sewerage, and the alteration of a general system, "so that all sewers within the district intended to be drained by such intercepting sewer, and now emptying into such river, stream or creek, shall thereafter be connected with the intercepting sewer."

What the legislature intended to authorize by this act was the building of an intercepting sewer for the purpose of purifying a stream of water, running through a city, which is used as a receptacle and conveyer of the sewage of such city, with such laterals, or alterations of the existing system as may be necessary to accomplish this result. We think that such intention is expressed in the act with sufficient clearness, and that the words "or a system of sewerage" refer to the preceding word "intercepting"—that is, authority is given to build an intercepting sewer or sewers, or a system of intercepting sewerage, and that the power conferred is limited to a system "now emptying into such river, stream or creek." In considering the constitutionality of a legislative act, courts ought to, and do, regard the substance of the legislative provision in preference to the form in which it is expressed. *Rutgers* v. *New Brunswick,* 13 *Vroom* 51, 54. The disputed statute manifestly embraces but one object, and that is the granting of authority to build an intercepting sewer, and such alteration of an existing general system of sewerage, as may be required to drain the existing sewers into a system of intercepting sewers, and is not therefore unconstitutional upon the alleged ground that it embraces more than one object.

The second objection urged is that the statute embraces objects not expressed in the title, because the title contains no reference to a system of sewerage, or to the establishment of outlets or places of deposit. We are unable to discover any basis for this objection. So much of it as refers to a system of sewerage is disposed of by what has already been said, and the establishment of outlets or places of deposit is an incident of the power to construct an intercepting sewer, and is sufficiently expressed in the title by the words "to build and construct intercepting sewers to receive all such sewage to be disposed of in such manner as shall be deemed proper.

The third objection is that the statute undertakes to regulate the internal affairs of towns or counties by a special law, in violation of the constitutional prohibition on that subject. The argument is that the statute does not embrace all cities, because it is limited to cities through which any river, stream

or creek runs, and into which the sewage of any city empties, and that this classification does not embrace a group of objects distinguished by characteristics sufficiently marked and important to make them a class for legislative purposes. The principal point pressed in support of this proposition is that the classification is illusory, in that cities having a stream running through them in which sewage is emptied, are not substantially different, for the purpose of such legislation, from cities bounding upon a stream into which sewage is being emptied. We think that the classification is justifiable and not illusory. Where the stream is a boundary line between one municipality and another, both of which are using the stream for the purposes of a sewer, the building of an intercepting sewer by one municipality, and not by the other, would not abate, nor would the cleansing of one-half of the stream remove, an existing nuisance detrimental to the public health. To accomplish that purpose joint action of the two municipalities would be required, and an entirely different method of procedure would have to be provided by the legislature. The evidence discloses that there are a number of cities in this state having streams running through them into which sewage is deposited, over which such cities have absolute and undivided jurisdiction, and the necessity for intercepting the flow of sewage into such a stream, and the cleansing of the entire stream in order to remove, and prevent the continuance of, polluting influences, presents a condition which can only arise in cities where the entire stream is within the limits of the city and can be wholly dealt with by that municipality, without the aid of another corporate body.

For the reasons given we have reached the conclusion that the statute is not such a local or special law as is prohibited by article IV., section 7, paragraph 11, of the constitution of the state. The proceedings brought under review by this writ are affirmed.